## TOWN OF ONTARIO v. HILL.

*(Supreme Court, General Term, Fifth Department.* October 23, 1890.)

APPEAL—REVIEW—WEIGHT OF EVIDENCE—ACCOUNTS.

On a settlement, M., supervisor of a town, delivered to his successor, H. various books, etc., and some money, belonging to the town. One of the books showed an indebtedness on the contingent fund of $243.58, and on the dog tax fund of $225.35; and H. signed a receipt prepared by M. for the books, etc., and cash to balance each of the funds. In an action several years afterwards by the town against H. for the dog tax fund, M. testified positively to the payment of both sums to H., which H. denied. The judge found that H. had received the amount of the contingent fund only. In the account-book, H. had credited to the contingent fund $243.58, while on the account of the dog tax fund on the same page was a credit of the same amount, with lines drawn across the figures, as if they had been written there by mistake; but they were in fact written upon an erasure, made with great care. There was also, on the page containing the account of the C. fund, an entry under the date of the settlement, signed by M., "Balance handed over to my successor, H., $243.58;" but, to the word "balance," the letter "s" had been added in ink of a different color and written in a different hand. These erasures were not called to the attention of the trial judge. From defendant's evidence, he must have received a larger sum of money than he had accounted for. *Held*, that it was conclusively established that defendant had received and failed to account for the $225.35, and that the judgment for defendant should be reversed. CORLETT, J., dissenting.

Appeal from special term, Wayne county.

Action by the town of Ontario against Francis A. Hill, as supervisor of that town. At the trial, the complaint was dismissed, and plaintiff appealed from the judgment entered thereon. On argument of the appeal before two justices only, they did not agree, and a reargument was ordered.

Argued before DWIGHT, P. J., and CORLETT and LEWIS, JJ.

*Camp & Dunwell*, for appellant. *Mr. Bentley*, for respondent.

LEWIS, J. The defendant was elected a supervisor of the town of Ontario, Wayne county, in March, 1883. He continued to hold the office up to the trial of this action. As such supervisor he was the lawful custodian of the town moneys, with the exception of the highway, bridges, school, and poor funds. It was his duty to keep, in a book to be provided for that purpose, a correct account of the moneys received as supervisor, and account annually to the town board for all moneys received and paid out by him. His immediate predecessor in that officer was one Stephen N. Main. Main had in his possession at the close of his term of office some articles of property belonging to the town, consisting of law-books, account-books, etc., and the sum of $468.93 in money. Two hundred and forty-three dollars and fifty-eight cents of this money belonged to what was kept and known as the "Contingent Fund," and $225.35 was known as the "Dog Fund." Main and Hill had a settlement of the supervisor's accounts in March, 1883. Main delivered to Hill the articles of property he held belonging to the town, and a sum of money.

The principal question involved in this appeal is as to the amount. The plaintiff claimed that Main paid the defendant both contingent and dog funds amounting to $468.93. The defendant admitted receiving the contingent fund, but denied that he received the other sum. This action was brought to recover the $225.35, the dog fund. Other causes of action were alleged in the complaint, and were litigated, but are not involved in this appeal. The learned trial judge decided that the defendant received from Main $243.58 only, being the contingent fund, and dismissed the plaintiff's complaint. The decision under review having been made by a careful and able judge of this court, who had the advantage of seeing and hearing the witnesses, and my learned associates to whom this appeal was submitted upon the former hearing having been unable to agree as to the proper disposition thereof, I have

given the case a very careful examination, and will give a brief review of the facts which have led my mind to the conclusion that the defendant received from Main the $225.35 in controversy. An important item of evidence was called to our attention upon the argument which does not seem to have been brought to the attention of the trial judge. Reference will be made to it hereafter. Main had, at the time of the settlement with defendant, in his hands the two funds amounting to $468.93. He had a settlement with defendant either on the 17th or 22d of March, 1883. The date is unimportant. It is not disputed that he delivered to his successor the supervisor's book in which was contained his accounts with the town as supervisor. One was kept and known as the "Contingent Account," and the other as the "Dog Fund Account." The books plainly show that Main was indebted to the town for both these funds. He paid to the defendant at the settlement a sum of money; at least $243.58. Hill gave him a receipt for the books, and $468.93 in money. The account-book was delivered to Hill, and he has had possession of it ever since. Main and Hill were the only witnesses who testified as to what took place at the settlement. They may be said to be equally interested in the result of the action. Main is not directly interested, but indirectly, and has the same motive to testify untruthfully as Hill. Main testified positively to the payment of both sums. Hill in nearly as positive terms denied that he received the dog fund. A receipt had been prepared by Main before the meeting for settlement. He testifies that he paid the money to Hill, and that Hill signed the receipt. The receipt was elaborately drawn, and reads:

"ONTARIO, March 17th, 1883.

"Received of S. N. Main, my predecessor in the office of supervisor of the town of Ontario, the following: [Here are mentioned various books, etc.] Also, received cash to balance the contingent fund, as appears from the supervisor's book, amounting to $243.58; * * * also, the dog fund on hand at the town settlement, $225.35,—making a total of cash received $468.93.

[Signed]          "FRANCIS A. HILL, Supervisor."

There is no mistaking its contents. Any person of ordinary intelligence, certainly a man of sufficient intelligence to be a supervisor, could comprehend its provisions. It was a writing of considerable length and importance. The settlement was deliberately made. Main testifies that he remained at Hill's house overnight, and that the accounts were carefully examined. It would require strong and positive evidence to satisfy my mind that Hill signed such a paper under such circumstances without reading it and understanding its contents fully. The supervisor's book, as we have seen, contains Main's account. It plainly appeared upon page 149 of the book headed "Dog Fund," under date of February 27, 1883, that Main was indebted at the time of the settlement on account of the dog fund in the sum of $225.35. The same item again appears upon page 152 of the book, but is entered in such a manner that a person unskilled in book-keeping might possibly not understand it; and the same may be said of the contingent fund account of $243.58 on pages 151 and 153. We must assume that the defendant examined these entries, as they were the last accounts contained in the book made by Main. The book came into defendant's possession March 22, 1883, and it appears that on that date he opened his account as supervisor with the town. He credited the contingent fund account with the sum of $243.58, just the amount as shown by Main's account, and the same sum his receipt acknowledged as having received of Main. Upon the credit column of the dog fund account on the same page appears the same figures "$243.58," with ink lines drawn across them, clearly showing an intention to convey the idea that they were written there by mistake. An examination of the paper under these last-mentioned figures shows that something was written there and erased before writing the figures through which the lines were drawn. The erasure was done with very great care, with an evident intention of not injuring the texture

of the paper so as to attract attention. From a casual examination of the page containing the account the erasure would not be likely to attract one's attention. It does not appear from the case that this alteration of the book was called to the attention of the trial judge. The figures "$243.58," which belonged upon the contingent fund column, might have been written upon the dog fund column, and credited to that fund by mistake, and then erased; but something was written to the credit of the dog fund account, and then carefully erased, and the figures "$243.58" written over the erasure, and then these figures erased by drawing the pen across them. What figures were written there first, we are not advised; but I am forced to believe that the dog fund was credited with the sum of $225.35 by the first entry, and then erased, and the other figures entered. It is very improbable that any other figures would have been entered there, for the figures representing the contingent fund had already been entered upon the proper column, and it is hardly possible that the same figures which appear credited to the dog fund were written there, and then erased, and the mistake of writing them again made. I am satisfied that each fund was credited with the figures belonging to it, making the sum of $468.93, the sum mentioned in the receipt, and that the figures "$243.58" were written over the erasure with a view of concealing evidence thereof. There is an entry on page 153 of the book reading: "March 22nd. Balance handed over to my successor, F. A. Hill, $243.58,"—and signed by Mr. Main. This entry is relied upon by the respondent as evidence that that sum only was paid to him. That was the balance of the contingent fund in Main's hands. The entry was properly made, even if the dog fund was also paid to Hill. If the entry had read "Balances handed over," etc., it would be evidence tending to show that that entry covered all the balances in Main's hands, and from an examination of the book it would seem that some one had appreciated the importance of its thus reading, for it will be seen that a somewhat bungling attempt has been made to add the letter "s" to the word "balance." The letter is in a different colored ink, and stands at a very different angle with the other letters composing the word. The letter "s" is written perpendicular, while the balance of the entry is in a distinctly backhand. I do not think the entry strengthens the respondent's case.

The defendant's evidence as to the amount of money paid him at the settlement by Mr. Main is not satisfactory. It appears from his evidence that he must have received a larger sum of money than he has accounted for. Main's evidence as to the amount of money paid is not quite clear, but the items of the account entering into the settlement were somewhat complicated and involved, and, considering the length of time which elapsed after the settlement and before the trial of the case, the want of recollection of the witnesses of the facts ought not to excite surprise.

I think the evidence as presented upon this appeal quite conclusively establishes that the defendant received and has failed to account for the $225.35 claimed in the plaintiff's complaint, and, had all the evidence before us been presented to the trial court, I am satisfied he would have so found. The authority of the plaintiff to bring the action is called in question by the respondent. The complaint was not dismissed upon that ground. I think the proceedings of the board of supervisors applying the provisions of the law of 1864 to Ontario county, they being in the nature of legislative enactments, are proper to be considered in this appeal, but without them I see no difficulty in the plaintiff's maintaining the action. The judgment should be reversed, and new trial granted, costs to abide the event.

CORLETT, J., (*dissenting.*) In March, 1883, the defendant, Francis A. Hill, became supervisor of the town of Ontario, Wayne county, and so far as appears he still continues such. Before that, Stephen N. Main was supervisor. In 1888 this action was commenced for the purpose, as the complaint alleges,

of recovering from the defendant moneys received by him in an official capacity growing out of the alleged misappropriation of town bonds; also to recover $225.35, known as the "Dog Fund," claimed to have been received by him from his predecessor. The action was tried at the Wayne equity term in September, 1888, before Justice MACOMBER. The claim for misappropriating moneys growing out of bond transactions was abandoned on the trial; thus eliminating from the case every question except whether the defendant received from his predecessor $225.35 belonging to the dog fund. It was agreed on the trial that the defendant received from Main $243.58, which, the plaintiff claimed, belonged to the contingent fund. The trial justice found "that on or about the 22d day of March, 1883, the defendant received from his predecessor in office the sum of $243.58, and no more." Upon this and the other findings, the complaint was dismissed on the merits. Judgment was entered on the decision, and the plaintiff appealed to this court.

The only serious question here is whether the trial justice erred in refusing to find that the defendant received from his predecessor this sum of $225.35. On the trial the plaintiff put in evidence a receipt dated the 17th day of March, 1883, given by the defendant to his predecessor. On the subject of the moneys paid to and received by the defendant it states: "Received cash to balance the contingent fund, as appears from the supervisor's books, amounting to $243.58; also vouchers number 1, 2, and 3 for money paid by him since town settlement, amounting to $53.47, credited to him on the books; also the dog fund on hand at town settlement, $225.35, making a total of cash received $468.93." The balance of the receipt related to books and records belonging to the town. Among other things it states: "One book of supervisor's accounts with the town, of receipts and disbursements coming into his hands." The receipt was signed by the defendant as supervisor. Main, the defendant's predecessor, testified for the plaintiff that he paid to the defendant at the time of the settlement $468.93. It appears that Main had a note against the defendant for money loaned, which was originally $500, upon which there were some indorsements. This note was given up at the time of the settlement, and received by the defendant as cash for the amount unpaid thereon. How much was unpaid on the note, or how much was paid in cash, does not very clearly appear. On his cross-examination, among other things, Main testified that he had no recollection of making any special memorandum, or having his attention called to this $225.35 dog fund after his settlement with Hill, until after the last annual town-meeting. The plaintiff also introduced other evidence on the question as to how much was due on the note. Main's testimony was that it amounted to between $350 and $400. There were some other circumstances proved on the part of the plaintiff which it is claimed strengthen the above evidence. The defendant testified on his own behalf that his predecessor turned over to him his note and money enough to amount to $243.58, also to the effect that nothing further was paid to him. His testimony also tended to show that the actual settlement was made on the 22d day of March, five days after the receipt was drawn, and that it was made on the supervisor's books; that he signed the receipt after the business was finished, without attention being called to its contents; and that he never knew the contents of the receipt. The book, among other things, contained the following entry: "March 22. Balance handed over to my successor, F. A. Hill, $243.58." The evidence, as a whole, tended to show that the defendant's predecessor drew the receipt on the 17th day of March at his own house, for the purpose of being signed at the actual settlement, and that it was drawn in such a way as to cover all the property and moneys he had in his hands as supervisor. The contention of the defendant is that, when the settlement was actually made, the book alone was considered, and the settlement based upon it. The signing of the receipt was a matter of form, without an examination, and all that was paid to him was $243.58. The

findings of the trial justice were in favor of the defendant's contention. He reached the conclusion after seeing and hearing the witnesses that the defendant was right. The opinion of the justice shows he did not find that the dog money was in Main's hands. Such a finding was not necessary to a determination of the case, and the learned justice properly held that, as Main was not a party to the action, there should be no finding which might prejudice him.

In *Roosa* v. *Smith*, 17 Hun, 138, it was held, in substance, that the tribunal before which a trial is had occupies a much better position to pass upon the credibility and weight of evidence than the appellate court. Some of the reasons assigned were that the testimony being given before him *viva voce* he could estimate the honesty, frankness, freedom from bias, and give credit or distrust, as he thought the witnesses deserved, in passing judgment upon the personal appearance, temper, and manners while on the stand, and had looked at all the reasonable probabilities suggested by personal contact with the parties and witnesses during their examination, and that there were many imperceptible and intangible matters before the trial court which could not be before the appellate. To the same effect are *Wheeler* v. *Miller*, 24 Hun, 541, and *Baird* v. *Mayor, etc.*, 96 N. Y. 567, where it was held that to justify a reversal it must appear that the proofs so clearly preponderated in favor of a contrary conclusion that it could be said with a reasonable degree of certainty that the trial court erred in its conclusions. But, upon the reargument of this appeal, a question not presented or considered is now brought to our attention. It is insisted by the learned counsel for the appellant that a new trial should be granted on the ground that certain erasures, as alleged, appear upon the aforesaid supervisor's book in connection with the account as settled and adjusted thereon, as hereinbefore stated. Although the book was put in evidence on the trial, and was in the same condition as it now appears, still the attention of the trial justice was not called to those erasures by the learned counsel for the appellant, nor was any comment or suggestion made upon their significance or suspicious character, nor was any reference made by counsel to the same upon the first argument of this appeal. The case was carefully and ably tried by vigilant and distinguished counsel; still those erasures were looked upon as of such trifling importance that they attracted no attention on the trial. The erasures consist in the careful obliteration of certain figures on the supervisor's book. What those figures were before they were erased cannot now be determined. But it is insisted that it is fair to assume that, before obliteration, those figures gave credit to the former supervisor for the dog money, and that the defendant, with fraudulent intent, deliberately erased the same, so that the supervisors's book would fall to show all the moneys received by the defendant. If the attention of the trial justice had been called to the subject, or if the point had been made on the trial, it may be that the defendant could have fully explained it when his attention was called to the subject, and that all suspicion of fraud or misconduct on the part of the defendant could have been removed on the trial. It is a familiar rule that points not raised or presented on the trial will not be considered on appeal. *Marston* v. *Gould*, 69 N. Y. 221; *Tooley* v. *Bacon*, 70 N. Y. 34; *Distin* v. *Rose*, 69 N. Y. 122, 123; *Day* v. *Town of New Lots*, 107 N. Y. 148, 13 N. E. Rep. 915; *Langley* v. *Wadsworth*, 99 N. Y. 61, 1 N. E. Rep. 106; *Thayer* v. *Marsh*, 75 N. Y. 340; *Adams* v. *Bank*, 116 N. Y. 606, 23 N. E. Rep. 7. The reason for this rule is apparent. The object and purpose of a trial is to enable the parties to present and litigate every question within the issues. If either party is dissatisfied with a finding upon a question of fact, or a ruling upon a question of law, he has a remedy by appeal. In other words, he can only obtain a review of a finding or ruling of the court below. But, if there was no finding or ruling by a trial court, there is nothing to review. It is no answer to say that the court

on appeal has the right to look into and consider the evidence presented on the trial. This is true; but it is equally true that if the objection, if made, might have been obviated on the trial, it will not be considered. The above cases, and numerous others which might be cited, show that, where a question appears in the case which is of such a character that the difficulty could not have been obviated if attention had been called to it, the point may be considered on appeal. If, on the other hand, it might have been cured or explained, if objection had been made or attention called to it,—and nothing of the kind appears in the case,—the appellate court will not consider it. If it were otherwise, cunning or ingenuity might keep in reserve controlling questions during the trial, which if raised might have been obviated; then, if the result is adverse, make them available on appeal. Courts, therefore, have uniformly held that all objections which might have been obviated, must be distinctly presented, or they will not be considered on appeal. The present case is a marked illustration of the propriety of this rule. The evidence when presented on the trial, in the particulars now objected to, was in the same form as now. If attention had been called to its suspicious character, it might have been fully explained by the accused or suspected party. But when it is suggested for the first time on appeal, if the court acts upon it, the party may be seriously prejudiced, and have the imputation of fraud rest upon him, and judgment in his favor reversed on the ground of his fraud or forgery; when, if the point had been made below, it might have been explained without imputing any wrong or fraud upon either party. If the appellate court gives effect to the erasures, although it does not appear what was erased, how or under what circumstances such erasures were made, or by whom, to the extent that it believes it would have reached a conclusion on the original hearing that those suspicious ear-marks needed an explanation, the party sought to be charged should have an opportunity to make such explanation. But if the appellate court grants a new trial based upon its opinion of the suspicious character of this evidence, when the point was not raised below, it assumes the functions of the trial court, without being able to afford an opportunity to explain or remove suspicions. If such a rule obtains, litigants never can determine what questions of fact not presented on the trial may be successfully sprung upon them on appeal. It is not seriously claimed that the findings of the trial court could be disturbed except for the erasures. It is believed there is no precedent for granting a new trial under such circumstances. It is a familiar rule that error cannot be presumed. This is especially so when the charge involves either fraud or forgery. But for the appellate court to assume the functions of the trial court, and then presume either fraud or forgery, is certainly without precedent.

The judgment should be affirmed.